UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SUSAN MATLOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:04-CV-323 |
| | ) | (VARLAN/GUYTON) |
| ATOMIC PAWN, INC. and | ) | |
| ATOMIC PAWN, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Susan Matlock alleges that defendants Atomic Pawn, Inc. and Atomic Pawn, LLC have violated the Truth-in-Lending Act ("TILA"), the Tennessee Usury Statute, and the Tennessee Consumer Protection Act arising out of certain title pledge agreements. The defendants have moved for summary judgment [Doc. 21] on all claims and the plaintiff has moved for partial summary judgment [Doc. 26], which are both ripe for determination. The Court has carefully reviewed the pleadings related to the pending motions [Docs. 23, 29, 31, 32] and considered the arguments of counsel presented on September 12, 2005.

For the reasons set forth herein, the defendants' motion for summary judgment will be granted whereby plaintiff's TILA claims will be dismissed with prejudice and the remaining claims will be dismissed without prejudice. Plaintiff's motion for partial summary judgment will be denied.

**I.     Relevant Facts**

Defendants operate a pawn and title pledge office in Oak Ridge, Tennessee. On May 19, 2003, plaintiff borrowed $310.00 from defendants in the form of a title pledge agreement. [Doc. 1 at ¶ 8.] The title to plaintiff's 1992 Subaru Wagon was the security for this 30-day loan.

Defendants charged plaintiff $68.20 in interest and fees for this transaction. Plaintiff renewed this transaction on June 18, 2003, July 17, 2003, August 15, 2003, September 12, 2003, October 10, 2003, November 7, 2003, and December 5, 2003. [Doc. 1 at ¶ 12.] The written agreements of these transactions contained an itemization of the amount financed, an itemization of the finance charge, the total amount of the loan, and the annual percentage rate ("APR"). [Doc. 14, Exs. A-H.] Plaintiff asserts that the defendants violated TILA by misstating the APR by 3.67% by disclosing it as 267.67% instead of 264% [Doc. 1 at ¶ 13]; and by failing to disclose a $2.00 "lost ticket" fee [*Id.* at ¶ 17]. Plaintiff has also asserted claims under the Tennessee Usury Statute, Tenn. Code Ann. § 47-14-101, *et seq.*, and the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104. Plaintiff's claims that defendants violated TILA for failure to disclose the finance charge, the total of payments, and APR were previously dismissed by the Court [*see* Doc. 16].

The record contains the Affidavit of Ray Struder, the President of LBS, Inc., the corporation through which Atomic Pawn does business. [Doc. 22.] On two occasions, September 12, 2003 and December 5, 2003, plaintiff paid a $2.00 lost ticket fee at maturity. Mr. Struder asserts that the lost ticket fee is not a fee incident to the extension of credit. It is only due at maturity and payable only if a customer wants to redeem, but does not have their receipt. The lost ticket fee is customary in the industry, being charged by other pawnshops and title pledge lenders. There are signs clearly posted in the store notifying customers of the charge. The fee is charged because of the additional work and risk it involves beyond the ordinary. In particular, the tickets are redeemable only by the bearer. Without the original, the pawnshop risks another person redeeming, plus they have additional record keeping and verification procedures on these occasions. [*Id.* at ¶ 12.]

2

## II.     Analysis

### A.     Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

3

B.  Truth-in-Lending

It appears that plaintiff assert two violations of TILA: that defendants charged an undisclosed hidden finance charge in the form of the $2.00 lost ticket fee on two occasions and that defendants overstated the APR by disclosing it as 267.67% rather than 264%.

1.  APR Disclosure

Defendants argue that they accurately calculated the APR in accordance with the actuarial method as set forth in Regulation Z, 12 C.F.R. § 226.22.  Regulation Z states as follows:

> (a) Accuracy of annual percentage rate.  (1) The annual percentage rate is a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of value received by the consumer to the amount and timing of payments made.  *The annual percentage rate shall be determined in accordance with either the actuarial method or the United States Rule method.*  Explanations, equations, and instructions for determining the annual percentage rate in accordance with the actuarial method are set forth in Appendix J to this regulation.

12 C.F.R. § 226.22(a) (emphasis added).  Appendix J to § 226, which contains instructions and equations for the actuarial method, provides that "[t]he annual percentage rate shall be the nominal annual percentage rate determined by multiplying the unit-period rate by the number of unit-periods in a year."  12 C.F.R. § 226, App. J(b)(1).  Appendix J also provides that "[i]n a single advance, single payment transaction in which the term is less than a year and is equal to a whole number of months, the number of unit periods in the term shall be 1, and the number of unit periods per year shall be 12 divided by the number of months in the term *or* 365 divided by the number of days in the term."  12 C.F.R. § 226, App. J(b)(5)(vi) (emphasis added).  The parties do not dispute that the transactions at issue are all single advance, single payment transactions with a term of thirty (30) days.

4

When this formula is applied to these transactions, the calculations are as follows: 12 divided by 1 equals 12, or alternatively, 365 divided by 30 equals 12.16666666. The finance charge, or unit period rate, imposed on these transactions was 22% as allowed by Tenn. Code Ann. § 45-15-11(a) (2% per month interest plus a "customary fee" equal to one-fifth or 20% of the loaned amount; thus $6.20 in interest (2% of $310.00) plus $62.00 (1/5 or 20% of $310) equals $68.20). Thus, when applied as set forth above: 12 x .22 = 264% or 12.16666666 x .22 = 267.67%. Alternatively stated, when the rate on the loans in question are disclosed on a 365-day basis, the $68.20 finance charge on $310.00 for thirty (3) days discloses as 267.67%. When the rate is disclosed under the 12-month or 360-day calculation, the loans in question are disclosed as 264%.

Plaintiff argues that defendants' overstatement of the APR as 267.67% does not comply with TILA's disclosure requirement. Plaintiff's rationale is that the Tennessee Title Pledge Act provides that the APR is to be calculated on a monthly basis and can only be 24% per year, or 2% per month. Plaintiff contends that if the APR of 267.67% were correct, the interest charged and disclosed would be 24.33% per year based on 360 days, a rate in excess of the amount of interest allowed by the Tennessee Title Pledge Act. The basis or rationale for this calculation is unclear. It is also unclear how a violation of the Tennessee Title Pledge Act, if one was found, would necessarily constitute a violation of TILA. As set forth above, the finance charge as disclosed on the loan documents was 22% as permitted by the Tennessee Title Pledge Act. Moreover, the plaintiff has presented absolutely no evidence that the defendants' APR disclosure was inaccurate or that the calculations propounded by the defendants are in error. Therefore, the Court finds that defendants' disclosure of the APR was accurate and not a violation of TILA.

Plaintiff also argues that defendants previously admitted that they had overstated the APR and should not now be permitted to change their position and assert that the APR was not overstated. Defendants respond that their previous position was asserted in the context of a motion to dismiss which takes the plaintiff's allegations as true. Thus, defendants contend that plaintiff has not been harmed by their initial failure to determine how the disclosures were calculated. Moreover, the defendants note that they have consistently denied liability for any violation of TILA. The Court agrees with defendants. Summary judgment will be entered in favor of defendants on this TILA claim.

    2.    <u>Lost Ticket Fee</u>

Plaintiff contends that the $2.00 lost ticket fee is an undisclosed hidden finance charge in violation of TILA. She argues that there is a causal connection between the fee and the extension of credit because the defendants would not allow the transaction to go forward until she paid the charge. On the two occasions where she could not produce evidence of her title pledge transaction, she was forced to pay a $2.00 fee before she could redeem her car or refinance her loan with the defendants. Plaintiff argues that this must have been a customary fee since a title pledge lender cannot charge any other types of fee besides interest and repossession fees. Plaintiff further argues that the lost ticket fee should have been disclosed as a finance charge.

Defendants argue that the lost ticket fee is not a "finance charge" as defined by TILA because there is no tying relationship between the imposition of the charge and the extension of credit. Defendants point out that the fee is due only at maturity and only if a borrower cannot produce their ticket. Defendants argue that the lost ticket fee is akin to "[c]harges for actual unanticipated late payment, for exceeding a credit limit, or for delinquency, default, or a similar

6

Case 3:04-cv-00323   Document 39   Filed 10/05/05   Page 6 of 8   PageID #: 129

occurrence" which are specifically excluded from the definition of finance charges in Regulation Z. 12 C.F.R. § 226.4(c)(2).

Regulation Z defines "finance charge" as "the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a). There is simply no evidence that the lost ticket fee is imposed "as an incident to or a condition of the extension of credit." Instead, it is only imposed when the borrower cannot produce the ticket. As noted by defendants, plaintiff did not have to renew the transaction, *i.e.*, seek an extension of credit, when she could not produce her lost ticket. Summary judgment will be entered in favor of the defendants on this TILA claim.

      C.      State Law Claims

Defendants argue that if summary judgment is granted in their favor on the TILA claims, the Court should decline to exercise jurisdiction over the remaining state law claims. Defendants also argue, however, that they should be entitled to summary judgment on their counterclaim under the Tennessee Consumer Protection Act which asserts that plaintiff should be liable for bringing a frivolous claim. In light of the Court's ruling on plaintiff's federal claims as set forth above, the Court will decline to continue to exercise supplemental jurisdiction over both parties' state law causes of action and those claims will be dismissed without prejudice. 28 U.S.C. § 1367(c).

7

Case 3:04-cv-00323   Document 39   Filed 10/05/05   Page 7 of 8   PageID #: 130

**III.  Conclusion**

For the reasons set forth above, the defendants' motion for summary judgment will be granted whereby plaintiff's TILA claims will be dismissed with prejudice and the remaining claims will be dismissed without prejudice.  Plaintiff's motion for partial summary judgment will be denied. An order reflecting this opinion will be entered.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE